J. LAWRENCE McCORMLEY (SBN 005005)
jlm@tblaw.com
LANCE R. BROBERG (SBN 024103)
lrb@tblaw.com
TIFFANY & BOSCO, P.A.
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, AZ 85016-9240
Telephone: 602.255.6000
Facsimile: 602.255.0103

PRO HAC VICE, JOHN J. FLYNN III (CAL. SBN 76419)
jflynn@nossaman.com
PRO HAC VICE, BENJAMIN Z. RUBIN (CAL. SBN 249630)
brubin@nossaman.com
NOSSAMAN LLP
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Telephone: 949.833.7800
Facsimile: 949.833.7878

Attorneys for Plaintiff,
T-MOBILE WEST CORPORATION

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| T-MOBILE WEST CORPORATION, a Delaware corporation, d/b/a T-Mobile<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL M. CROW, in his official capacity as President of Arizona State University; ARIZONA STATE UNIVERSITY; ARIZONA BOARD OF REGENTS, its governing body; FRED BOICE, in his official capacity as President of the Arizona Board of Regents; ROBERT BULLA, in his official capacity as a member of the Arizona Board of Regents; ERNEST CALDERON, in his official capacity as Vice President of the Arizona Board of Regents; DENNIS DECONCINI, in his official capacity as a member of the Arizona Board of Regents; FRED DUVAL, in his official capacity as Treasurer of the Arizona Board of Regents; LUANN LEONARD, in her official capacity | Case No:<br><br>ASSIGNED FOR ALL PURPOSES TO:<br><br>**COMPLAINT FOR:**<br><br>**(1)  Violation of 47 U.S.C. § 332(c)(7)(B)(i)(I);**<br><br>**(2)  Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II);**<br><br>**(3)  Violation of 47 U.S.C. § 332(c)(7)(B)(iii)** |

as a member of the Arizona Board of Regents; ANNE MARIUCCI, in her official capacity as a member of the Arizona Board of Regents; DAVID MARTINEZ III, in his official capacity as a member of the Arizona Board of Regents; BOB MCLENDON, in his official capacity as a member of the Arizona Board of Regents; ROSS MEYER, in his official capacity as a member of the Arizona Board of Regents; the Honorable JANET NAPOLITANO, in her official capacity as an ex-officio member of the Arizona Board of Regents; the Honorable TOM HORNE, in his official capacity as an ex-officio member of the Arizona Board of Regents; and DOES 1-10, inclusive,

          Defendants.

Plaintiff T-Mobile West Corporation ("T-Mobile"), a Delaware corporation, alleges as follows:

**BRIEF SUMMARY**

1. T-Mobile brings this action to seek redress for the Defendants' violation of the federal Communications Act, as amended, 47 U.S.C. § 332(c)(7)(B) ("Communications Act"), arising from Defendants' refusal to renew T-Mobile's Site License Agreements. (T-Mobile is the successor to VoiceStream PCS III Corporation, a Delaware corporation, and two of three site License Agreements, and the original licensee on the other.) As set forth more fully below, this decision is not supported by substantial evidence contained in a written record, results in unreasonable discrimination between T-Mobile and its competitors, and effectively prohibits the provision of T-Mobile's wireless service at Arizona State University.

**JURISDICTION AND VENUE**

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 47 U.S.C. § 332. Venue is proper in this Court under 28 U.S.C. § 1391(b) in that the Defendants reside in this district and a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

# THE PARTIES

3. Plaintiff T-Mobile is a corporation duly organized and operating under the laws of the State of Delaware, with its principal place of business in Bellevue, Washington, and is authorized to do, and is doing, business in the State of Arizona. Plaintiff T-Mobile is a wholly owned subsidiary of T-Mobile USA, Inc. ("T-Mobile USA"), a Delaware corporation, also with its principal place of business in Bellevue, Washington, and duly authorized to do, and doing, business in the State of Arizona. T-Mobile is the operating entity for T-Mobile USA in Arizona. As such, T-Mobile does business under the name of T-Mobile and uses FCC licenses to provide Commercial Mobile Radio Services (CMRS) services over a wireless telecommunications network within Arizona. Pursuant to the authority of the FCC licenses, T-Mobile provides personal wireless services as defined under federal law.

4. T-Mobile is informed and believes that Defendant Michael M. Crow is the President of Arizona State University, and as such, is the officer responsible for the enforcement of University regulations, policies, and decisions.

5. Defendant Arizona State University is a public educational institution located in the State of Arizona.

6. Defendant Arizona Board of Regents is a body corporate, for and on behalf of Arizona State University, with jurisdiction and control over all State universities, including Arizona State University. Ariz. Rev. Stat. § 15-1625.

7. T-Mobile is informed and believes that Defendant Fred Boice is a member and President of the Arizona Board of Regents, and resides in the State of Arizona.

8. T-Mobile is informed and believes that Defendant Robert Bulla is a member of the Arizona Board of Regents, and resides in the State of Arizona.

9. T-Mobile is informed and believes that Defendant Ernest Calderon is a member and Vice President of the Arizona Board of Regents, and resides in the State of Arizona.

10. T-Mobile is informed and believes that Defendant Dennis DeConcini is a member of the Arizona Board of Regents, and resides in the State of Arizona.

11.     T-Mobile is informed and believes that Defendant Fred DuVal is a member and Treasurer of the Arizona Board of Regents, and resides in the State of Arizona.

12.     T-Mobile is informed and believes that Defendant LuAnn Leonard is a member of the Arizona Board of Regents, and resides in the State of Arizona.

13.     T-Mobile is informed and believes that Defendant Anne Mariucci is a member of the Arizona Board of Regents, and resides in the State of Arizona.

14.     T-Mobile is informed and believes that Defendant David Martinez III is a member of the Arizona Board of Regents, and resides in the State of Arizona.

15.     T-Mobile is informed and believes that Defendant Bob McLendon is a member of the Arizona Board of Regents, and resides in the State of Arizona.

16.     T-Mobile is informed and believes that Defendant Ross Meyer is a member of the Arizona Board of Regents, and resides in the State of Arizona.

17.     T-Mobile is informed and believes that Defendant Governor Janet Napolitano is an ex-officio member of the Arizona Board of Regents, and resides in the State of Arizona.

18.     T-Mobile is informed and believes that Defendant Tom Horne is an ex-officio member of the Arizona Board of Regents, and resides in the State of Arizona.

19.     The true names and capacities of Defendants sued as Does 1-10, inclusive, whether individual, corporate, associate or otherwise, are unknown to T-Mobile at this time, which therefore sues them by such fictitious names.  T-Mobile will seek leave of this Court to amend this complaint to show their true names and capacities when they have been ascertained. Each of the Defendant Does 1-10, inclusive, is in some way responsible for the wrongful acts alleged herein.

20.     T-Mobile is informed and believes, and based thereon alleges, that, at all times mentioned herein, each of the Defendants, including the Doe Defendants, was the agent, joint venturer, partner, servant, and/or employee of each of the other Defendants, and each was acting within the scope of its authority as such agent, joint venturer, partner, servant, and/or employee, with the permission and consent of the Defendants, and each of them.

## THE COMMUNICATIONS ACT

21. By enacting the Communications Act of 1934, Congress sought to ensure federal control over radio frequencies and over the licensing, frequencies of operations, and technical standards applicable to the use of such frequencies.  In 1996, Congress amended the Communications Act to promote the rapid deployment of advanced wireless telecommunications services and to make such services available everywhere in the country by creating a pro-competitive and de-regulated environment.  In furtherance of this goal, the Communications Act, as amended, protects the ability of wireless telecommunications service providers to deploy their systems nationwide.  The Communications Act also preempts state and local regulation that interferes with federal authority, with few exceptions, by imposing numerous restrictions on state and local authority as they pertain to specific wireless facilities. State and local government regulations, inter alia:

(a) shall not prohibit or have the effect of prohibiting the provision of personal wireless services; and

(b) shall not unreasonably discriminate among providers of functionally equivalent services.

In addition, any state or local government decision denying a request to place, construct or modify a personal wireless facility must be in writing and supported by substantial evidence contained in a written record.

## THE IMPORTANCE OF THE COMMUNICATIONS ACT

22. Wireless telephone service is essential to public safety and convenience, and providing dependable coverage is remarkably important to the safety of those in the campus environment.  The use of wireless phones by college students, for example, is endemic. Students living on a campus are much more likely to rely upon wireless phones than a landline to meet their telecommunications needs.

23. Since Congress amended the Communication Act in 1996 there has been a sea change in the manner in which Americans utilize telecommunications services. According to the

285801 - 3 -
COMPLAINT

FCC, nearly everyone carries a wireless device. *Annual Report and Analysis of Competitive Market Conditions With Respect to Commercial Mobile Services(2008)* ¶ 244, p. 107. From 1996 to 2006, the number of wireless telephone users has increased more than fivefold – from 44 million to more than 241.8 million wireless subscribers. There are now more wireless subscriptions than landline telephone subscriptions in the United States. Approximately 80% of all Americans, and over 90% of those in the 20 to 49 age range, own wireless phones. For many Americans, cell phones have become an indispensable replacement for traditional landline telephones. Since 2003, the number of wireless-only households has tripled. In 2006, nearly 12% of all adults lived in a wireless-only household. This trend is even more prevalent among younger adults, where approximately 25% of all adults aged 19-24 live in wireless-only households, and nearly 30% of adults aged 25-29. Americans are opting increasingly to use their cell phones over their landline telephones. From 1996 to 2004, Americans more than quadrupled their time spent talking on their cell phones, while markedly reducing the number of long-distance and local calls made over conventional landlines.

24. For Americans living in wireless-only homes and those outside of their homes, cell phones are often their only lifeline in emergencies. Since 1995, the number of 911 calls made by people using wireless phones has more than tripled. Public safety agencies estimate that more than 290,000 emergency 911 calls are placed from cell phones every day.

**TERMINATING T-MOBILE'S SITE LICENSE AGREEMENT**

25. T-Mobile has been a longstanding provider of wireless service at the Tempe campus of Arizona State University, providing services to students, faculty, employees and visitors. Currently, T-Mobile operates under three Site License Agreements, for three facilities, located on the Arizona State University campus at the Karsten Golf Course (referred to as Site No. PH30245i), the Computer Commons (referred to as Site No. PH30205C), and the Water Tower (referred to as Site No. PH30416A).

26. Site License Agreements issued by the Board of Regents for the Arizona State University campus are similar in effect to a conditional use or special use permit that might be

issued by a local government. A Site License Agreement authorizes a telecommunications service provider to locate, construct and operate a wireless telecommunications facility on University property, including rights-of-way. To locate, construct, operate, maintain or modify wireless facilities on the Arizona State University campus, T-Mobile must obtain and comply with a Site License Agreement from the Board of Regents, notwithstanding any approvals that may have been received from the City of Tempe.

27. Defendants recently contracted with a third party to install a Distributed Antenna System ("DAS") (a network system of support structures, antennae, and operating equipment) for all Arizona State University campus locations, including Tempe. Defendants indicated that henceforth they would refuse to renew existing Site License Agreements for wireless carriers.

28. On or about June 19, 2008, Defendants sent T-Mobile an official notice that it would not renew the Site License Agreement for its existing facility at the Computer Commons (Site No. PH30205C). The effect of Defendants' notice is to terminate Plaintiff's ability to operate for successive four five-year term site license renewals, deny Plaintiff's ability to maintain and operate a wireless facility at the Computer Commons, and require Plaintiff to cease providing wireless services on campus unless Plaintiff enters into an agreement with the third-party DAS vendor. Defendants have also informed Plaintiff that it is not allowed to do any additional work at the ASU Computer Commons cell site until Plaintiff signs an agreement with the third-party DAS vendor.

29. On information and belief, Plaintiff alleges that, although all FCC-licensed wireless service providers are required to have a Site License Agreement issued by the Board of Regents to operate a wireless facility on the Arizona State University campus, not all service providers are treated equally. On information and belief, Plaintiff alleges that an FCC-licensed wireless carrier that competes with T-Mobile, both in Arizona and nationally, received a Site License Agreement for the Computer Commons site with a termination clause that effectively grants T-Mobile's competitor the right to use its facility on the Campus Commons for twenty additional years, subject only to the carrier's non-default and a standard state "appropriation of

funds" clause. Thus, the competing carrier is free of the prohibitory constraints imposed by virtue of Defendants' DAS requirement, described above.

### FIRST CLAIM FOR RELIEF

**(Violation of 47 U.S.C. § 332(c)(7)(B)(i)(I): Discrimination Among Providers of Functionally Equivalent Services – Against All Defendants, Including Doe Defendants)**

30. T-Mobile incorporates herein by this reference, as though fully set forth, each and every allegation contained in paragraphs 1-29, inclusive.

31. Defendants' refusal to renew T-Mobile's Site License Agreement unreasonably discriminates among functionally equivalent service providers.

32. Defendants' refusal to renew T-Mobile's Site License Agreement unreasonably discriminates in favor of Defendants' preferred telecommunications provider.

33. T-Mobile has been injured by the above-described violation of the law, and cannot be adequately compensated in money damages for its injury.

### SECOND CLAIM FOR RELIEF

**(Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II): Prohibition of Provision of Personal Wireless Services – Against All Defendants, Including Doe Defendants)**

34. T-Mobile incorporates herein by this reference, as though fully set forth, each and every allegation contained in paragraphs 1-29, inclusive.

35. Section 332(c)(7)(B)(i)(II) bars local regulation of the placement, construction, and modification of personal wireless service facilities that prohibits or has the effect of prohibiting the provision of personal wireless services.

36. T-Mobile's facilities are necessary for filling a significant gap in its coverage in the City of Tempe, and on the Arizona State University campus in particular. T-Mobile's facilities provide the least intrusive means by which to fill this gap. Defendants' actions and omissions described above prohibit and/or have the effect of prohibiting T-Mobile from

1  providing personal wireless services on the Tempe campus, in violation of 47 U.S.C. §
2  332(c)(7)(B)(i)(II).
3      37.   T-Mobile has been injured by the above-described violation of the law, and cannot
4  be adequately compensated in money damages for its injury.

## THIRD CLAIM FOR RELIEF

### (Violation of 47 U.S.C. § 332(c)(7)(B)(iii):

### No Substantial Evidence – Against All Defendants, Including Doe Defendants)

8      38.   T-Mobile incorporates herein by this reference, as though fully set forth, each and
9  every allegation contained in paragraphs 1-29, inclusive.
10     39.   Defendants' June 19, 2008 notice of non-renewal was not supported by substantial
11 evidence contained in a written record, and therefore violates 47 U.S.C. § 332(c)(7)(B)(iii).
12     40.   T-Mobile has been injured by the above-described violation of the law, and cannot
13 be adequately compensated in money damages for its injury.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays judgment as follows:

1. On all Claims for Relief:

For a temporary restraining order, and preliminary and permanent injunctions:

(a) prohibiting Defendants from enforcing the requirement to locate on the third-party DAS; and

(b) prohibiting Defendants from taking any action to evict T-Mobile from the sites described in the Site License Agreements;

(c) compelling Defendants to renew the T-Mobile Site License Agreements on terms necessary to avoid the unreasonable discrimination described above.

2. On all Claims for Relief:

An award of costs and all other relief that the Court may deem just and proper.

///

///

DATED: JULY 21, 2008

J. LAWRENCE MCCORMLEY
LANCE R. BROBERG
TIFFANY & BOSCO, P.A.

By: /s/ JLM/ SBN 005005
        J. Lawrence McCormley

JOHN J. FLYNN III
BENJAMIN Z. RUBIN
NOSSAMAN LLP

By: /s/ JJF/ Cal. SBN 76419
        John J. Flynn III

Attorneys for Plaintiff,
T-MOBILE WEST CORPORATION

285801

- 8 -

COMPLAINT